CLERK'S COPY

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MUJAHID S. MALIKULMULK,

    Plaintiff,

V

U.S. GOVERNMENT
~~DENNIS MCDONOUGH, ET AL~~

    Defendant;

Civil No. 23-10582

Honorable Jonathan J.C. Grey

Magistrate Judge Elizabeth Stafford



FILED JUL 12 2023 CLERK'S OFFICE DETROIT

## Plaintiff's Reply to Defendants Brief Supporting it's Motion to Dismiss

I, Mujahid S. Malikulmulk, appearing *pro se,* respectfully submit this Reply Motion Brief, to the Court's Honorable Dawn N. Ison, United States Attorney, and James J. Carty, Assistant U. S. Attorney. Should this be within the Court's process protocol, at this or any future time during the legal process, then the Court can advise this plaintiff of the proper manner to proceed to notify and engage the Defendant in concurrent negotiation.

Dated: __JULY 06, '23__ Signature __Mujahid S. Malikulmulk__

    Printed Name __MUJAHID S. MALIKULMULK__

    Street Address __41086 SOUTHWIND DR.__

    City/State/and Zip Code __CANTON, MI. 48188__

    Telephone Number __734-548-7700__

*i*

## PLAINTIFF'S REPLY TO DEFENDANT'S "DISMISSAL" MOTIONS

1. The bases/basis of the Defendant/VA's arguments is that it has jurisdiction over plaintiff(s) FTCA Complaint, predicated upon the premise that the plaintiff(s) is claiming "provision of benefits", which is governed by the Veterans Judicial Review Act. No such complaint/claim for "provision of benefits" is made.

2. Continuing, unrelenting defamation of character with two uncorrected false

3. statements, (root cause of the deprivation of education and consequential loss

4. of earning income), is FTCA subject matter. Defendant/VA's attempts to

5. construe that its' jurisdiction, prevails over that of FTCA's, fails.    It took the

6. Plaintiff from 07/2006 to 06/01/2022, to exhaust the maze of  legal

7. and administrative remedies; prevailing eventually to win a 100%

8. provision of VA disability benefits, dating back to the 2004 start date.

9. The origin of the following two false and character damaging

10. statements can be found in the 2006 Rating Decision of the Regional

11. Office's U.S. Department of Veteran Affairs, No. 365362960,

12. Mujahid S. Malikulmulk, aka Raynor R. Collins, RA 16623268:

13. "... there is no evidence currently available to the VA that documents that these [atropine] injection occurred".

14. "On your Military separation Documents {DD214) it is documented that you stated you were in the infantry, airborne, and a paratrooper in service. There is no evidence currently available to the VA that documents these military occupations, [infantry, airborne and a paratrooper] in service".

1

15. The real sum-dollar damage to the Plaintiff(s) and his family is in the
16. difference between the earnings of a high school graduate, compared
17. to the earnings of a worker with a Bachelor degree. *(SEE ATTACHED A)*
18. Defendant/VA's Dismissal Motion, on Page 4, paragraph A. Introduction, attempts to redundantly redefine the plaintiff's FTCA claim, thusly: "…plaintiff… disagrees with the scope and start date of the awards…". In so doing Defendant/VA denies its' own. 06/01/2022 Rating Decision, (attachment A), awarding plaintiff Mujahid MALIKULMULK, VA File Number 365 36 2960, page 6, number <u>11. Entitlement to an earlier effective date for service connection of bilateral hearing loss.</u> "…This rating corrects the prior decision by applying 38 CFR 3.156(c) while granting service connection for your bilateral hearing loss effective July 24, 2004.", (plaintiff's original VA claim's start date). *(SEE ATTACHED 06/0/23 RATING DECISION)*
19. No "Notice of Disagreement" was filed by the plaintiff within the allotted time. Case closed.

    a. There can be no scope greater than the total 100% disability, awarded, (effective July 24, 2004), for plaintiff's service-connected hearing loss.

    b. Therefore, Defendant/VA's attempt to redefine plaintiff's FTCA claim as a disagreement with the scope and start date is illogical, fatally flawed and fails when compared with their other previous and 06/01/2022 Rating Decision's actual facts.

2

20. Defendant redundantly continues in second (2nd), paragraph, "Plaintiff has exhausted his statutory appeals in the claims dispute", yet insist, on ECF No. 23 Page ID 69 filed 05/18/23 page 7, to advocate that, "…such claims should be dismissed for failure to exhaust.". Defendant/VA then cites the Veterans Judicial Review Act, which is applicable to "provision of benefits". VJRA does not exempt the Defendant/VA from FTCA Complaints based upon defamation of character, failure to correct "fatally flawed" denial statements and loss of earnings due to the fraudulent deprivation of educational benefits.

21. The plaintiff(s) make no claim for "provision of benefits" in their FTCA complaint, and are forced to redundantly state that the plaintiff(s) have filed a FTCA complaint that documents VA"s past and current litigation publication, wherein it relentlessly defends the two "fatally flawed" false statements of its' December, 2006 Tiger Team's Rating Decision, which libels, slanders, misrepresents, (with malice aforethought), defames plaintiff, and is a maligning calumny, invades the veteran's privacy, and maliciously assassinates the veteran's honorable character.

22. There's no plaintiff(s) FTCA claim for "provision of benefits", that validate Defendants/VA's stipulation, that veteran plaintiff is required to request, (via SF 95), VA's permission to pursue justice in the higher FTCA Court. However, a form 95 was submitted via the U.S Attorney General's Whistle Blowers venue. Therefore Defendant/VA's Jurisdictional and SF 95 requirement argument. is fatally flawed and fails. *(SEE 07/27/2022 attached LETTER FROM PLAINTIFF TO U.S. ATTORNEY GEN.)*

3

23. **SUM CERTAIN DAMAGE of GENERATIONS DEPRIVED OF EDUCATION**
24. The sum of punitive damages sought by the plaintiff(s), is derived from damage wrought by Defendant/VA two false denial statements, which in effect, irreparably, deprived the Plaintiff(s) and their children of college educated worker wages.
25. According to the U.S. Bureau of Labor statistics, see "Education pays, 2022", (attached publication dated May 2023),
26. Workers age 25 and older *without* a high school diploma, median weekly earnings are $682.
27. Workers with only a high school diploma earned $863 per week.
28. College drop outs earned $985 weekly.
29. Associate's degree holders, earned $1005 weekly.
30. Graduates with Bachelor's degree earned $1,432 weekly.
31. Workers privileged to attain a Master's degree earn $1601, a Professional Degree earn $2,080, and Doctoral Degree earn $2083.
32. A Bachelors degree's, 25% greater, (then that of a high school graduate), earning capability, enables a family with two educated parents, to raise their family's standard of living.
33. The sum of the economic damage foisted upon the veteran Plaintiff and his family is documented in the U. S. Bureau of Labor Statistics, which further translates into economic deprivation at every level of civic life for successive generations.
34. The damage is irrevocable and more often than not, drives the affected, economically enslaved families, deeper into the abyss of the non-productive, burdensome squalor of inhumane existence.

35. The wage difference dollar sum, differs in accord with the employment and educational history of the Plaintiff's wives, and children.

36. REAL DOLLAR DAMAGES

37. Plaintiff summarizes the damage to himself and his families in real dollars, using the 25%, (or relative) difference between the weekly/ annual earnings of a high school graduate, vs the earnings of a Bachelor or higher degree worker, according to the U.S. Bureau of Labor Statistics, (SEE ATTACHMENT)

38. Example: The annual earning median deprivation, between a high school graduate and a worker with an Bachelor Degree, is $6,448. X 19 years, (2004-2023), equals a $122,512 loss.

39. The plaintiff's wife Darlene, earned an Associate Degree, May 2001 worked from Dec, 2004 to July 08, 2014 retirement, a total of 9.5 years X $427 denied difference, equals deprivation of $4056.50

40. When the plaintiff owed IRS delinquent income tax, the plaintiff was obligated to pay daily compound interest. Government agencies should not have Constitutional or legal "rights" greater than those by whom it exist. Daily compound interest on the deprived sums is warranted.

41. The sums of the economic impact of the educational deprivation on wages earned for Plaintiff(s) children is as follows.

42. Ray Anthony Collins b. 7/19/1959, age 45 in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earning), $6,448 X 19 years, (2004-2023), = $122,512.

43. Nadira Lailaa Wade, b. 5/18/1960, age 44 in 2004, high school graduate worker's earning, (deprivation compared to Bachelor's degree earning), $6,448. X. 19 years, (2004-2023), = $122,512.

5

44. Kevin Dwayne Collins, b. 12/26/61, age 43, in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earnings), $6,448 X 19 years, (2004-2023), = $122,512.

45. Gay Collins-Nelson, b. 09/17/66, age 38, in 2004, high school graduate worker's earning, (deprivation compared to Bachelor's degree earnings), $6,448.X 19 years, (2004 – 2023), = $122,512

46. Gail Collins-Terhune, b. 07/02/1968, age 36, in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earnings), $6448 X 19 years, (2004 – 2023), = $122,512.

    a. Gail is entitled to restitution for the tuition cost she incurred to get her Bachelor degree, in that she sacrificed her family's standard of living, below that of the earnings of a high school graduate and would have had no student loans to repay.

47. Shahid Malikulmulk, b. 05/13/1977, age 27, in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earnings). $6448 X 19 years, (2004 – 2023}, = $122,512.

    a. Shahid is entitled to restitution for the tuition cost he incurred to get his Bachelor degree, in that he sacrificed his family's standard of living, below that of the earnings of a high school graduate and would have had no student loans to repay. Plaintiff paid his son's student loan balance with VA provision of benefits, awarded to him.

6

48. Khalilah Massey, b. 10/22/1982, age 22, in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earnings), $6448 X 19 years, (2004 - 2023), = $122,512.

    a. Khalilah, has student loan debt in excess of $70,000, as a consequence of sacrificing her bachelor degree goal to attend to her two girls, (the oldest struggling financially to earn her Bachelor degree, assisted with plaintiff's VA provision of benefits awarded to him.

    b. Raheem Malikulmulk, b. 01/30/1985, age 19, in 2004, high school graduate worker's earnings, (deprivation compared to Bachelor's degree earnings), $6448 X 19 years, (2004-2023) = $122, 512. .

    c. Plaintiff paid his son's student loan balance with VA provision of benefits, awarded to him.

49. The plaintiff's first wife Doretha, second wife Jumana and her two daughters Millicent and Natalie, Plaintiff's third wife Darlene, (of 47 years), should be awarded similarly, for loss of consortium, in that the Defendant/VA's, contemptuous withholding of evidence with two "fatally flawed", false statements and defamation of their husband's character, contributed to the loss of their potential earning difference between the earnings of a high school graduate and that of a worker with a Bachelor degree. (5 X $122,512 = $612560)

    The total sum of plaintiff(s) actual earnings loss $980,096

50. Potential earnings loss, (divorced wives, 2 dau.)   <u>612,560</u>

51. Total                                                $1,592,656

7

52. This court should have an interest in deterring Defendant/VA's future misconduct and should award maximum allowable compensatory and punitive damages.

*The origin of the two false and character damaging statements can be found in the 2006 Rating Decision of the Regional Office's U.S. Department of Veteran Affairs, No. 365362960, Mujahid S. Malikulmulk, aka Raynor R. Collins, RA 16623268. It took the Plaintiff from 2006 to June 01, 2022, to exhaust the maze of legal and administrative remedies and prevail, eventually winning 100% provision of VA disability benefits, dating back to 2004 start date. The damage is in real dollars to the Plaintiff and his family*

53. CONCLUSION
54. Defendants Motion to Dismiss should be denied as the Court has sole jurisdiction to waive sovereign immunity and to accept or reject Plaintiff(s) claim.

By the Grace of CREATOR GOD,

Respectfully Submitted,

Mujahid S. Malikulmulk, ProSe Plaintiff

41086 Southwind Drive

Canton, Michigan 48188

Text 734-548-7700   mujahidmalikulmulk@outlook.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON July 06, 2023, I served by:

(1) Certified mail, Plaintiff's Reply to Defendant/VA's MOTION TO DISMISS, to Honorable Jonathan J.C. Grey, for Honorable Assistant United States Attorney, James J. Carty, (P74981), at 211 W. Fort Street, Suite 2001, Detroit Michigan, and

(2) Personally delivered a copy to the UNITED STATES DISTRICT COURT, for the EASTERN DISTRICT OF MICHIGAN OFFICE OF THE CLERK THEODORE LEVIN UNITED STATES COURTHOUSE 231 W. LAFAYETTE BLVD-ROOM 564 DETROIT MICHIGAN 48226

*Mujahid S. Malikulmulk* (signature)

Mujahid S. Malikulmulk, Pro Se

41086 Southwind Drive

Canton, Michigan 48188

Cell text no. 734-548-7700; email: mujahidmalikulmulk@outlook.com dated July 06, 2023

*ATTACHMENT TO CIVIL NO. 23-10582*

**mujahidmalikulmulk@outlook.com**

**From:** Payne, Oree M., VBACHGO <oree.payne@va.gov>
**Sent:** Wednesday, May 4, 2022 5:15 PM
**To:** mujahidmalikulmulk@outlook.com
**Subject:** re: Your inquiry

Good afternoon Mr. Malikulmulk

I attempted to contact you by phone, but we were unable to communiate due to your hearing loss condition. You requested that I commuicate via text, but am unable to do so from my work phone, thereofore I am contacting you via email.

I am reaching out to you about an inquiry that was submitted to the Under Secreary for VA Benefits with the following concerns:
 (1) In March 2022, you submitted documents alleging a Clear and Unmistakle Error (CUE) for rating decision dated July 24, 2006;
 (2) We erronoiously sent a request for application letter althought no sepcific form is required to review an alleged CUE; and
 (3) No decision has been received on your request for a CUE review for rating decision.

I wanted to let you know that we agree that the documents submitted is sufficent to establish a claim and we are thereofore establishing a claim to review your CUE allegation. You will be notified when a decision is reached on your claim. Please allow at least 30 days for a decision on your CUE claim.


Oree M. Payne
Rating Veterans Service Representative (RVSR)
Chicago VA Regional Office

2122 W. Taylor St. 60612
800 827-1000

1

Mujahid S. Malikulmulk, aka Raynor R. Collins   *ATTACHMENT TO CIVIL NO 23-10582*
Per Se Veteran RA 16623268
Claim No. 365362960 and current 86092242
11086 Southwind Drive
Canton, Michigan 48188-1312

July 27, 2022

Honorable Merrick B. Garland, Attorney General
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

                                    Re: Restoring Veteran's Honor

Honorable U.S. Attorney General:

Sir, sincere THANK YOU! I have been awarded retroactively, my honorably earned service connected injury compensation, for U.S. Army 101st infantry, airborne paratrooper service. However. VA's, (Court adjudicated), false, denial statement, ("...There's no evidence of the veteran's infantry, airborne paratrooper service...or that he was ordered to self inject two, 2mg syrettes of atropine sulfate...") still maliciously defames and publically libels me with attempted fraud, since VA vehemently and adamantly defends and retains the statement in my service record as fact.

My TORT claim is incomplete. Incomplete, because I've learned in preparing it per se, that you - The honorable U.S. Attorney General have the legal power to negotiate a settlement.

Settlement for me is simply VA documenting in my service record that the "no evidence" denial statement is false - a Clear and Unmistakable Error, or misfeasance/malfeasance, thereby vitiating the entire July 2006, 10 issue VA "DECISION". VARO can then reexamine the remaining nine issues based upon the medical record and truth as it should have done in 2006 and proceed from there.

Sincerely,
*[signature]*
Mujahid S. Malikulmulk aka Raynor R. Collins RA 16623268

cc: file
VARO Director 477 Michigan Ave. Detroit, Mi. 48226

*[Handwritten annotations in margins:]*

*TITLE 38, CHAPTER 1, PART 3 - PENSIONS, COMPENSATION and DEPENDENCY & INDEMNITY COMP; 38, CHAPTER 1, PART 3 §*

*§3.2 PERIODS OF WAR (f) Vietnam era (Authority: 38 U.S.C. 101) The period beginning on FEB 28, 1961 ending MAY 7, 1975 IN NAM SERVICE*

*ATTACHED TO CIVIL NO. 23-10582*

## DEPARTMENT OF VETERANS AFFAIRS
### Veterans Benefits Administration
### Regional Office

Mujahid MALIKULMULK

VA File Number
365 36 2960

Rating Decision
06/01/2022

## INTRODUCTION

The records reflect that you are a Veteran of the Peacetime. You served in the Army from January 23, 1959 to March 23, 1962. You filed a new claim for benefits that was received on April 30, 2021. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

## DECISION

1. Service connection for tinnitus is granted with an evaluation of 10 percent effective December 3, 2004.

2. No revision is warranted in the decision to deny compensation for cataracts bilateral eyes (claimed as vision impairment).

3. No revision is warranted in the decision to deny compensation for diabetes mellitus.

4. No revision is warranted in the decision to deny compensation for erectile dysfunction.

5. No revision is warranted in the decision to deny compensation for gastroesophageal reflux disease (claimed as GI disorder).



G01200931100080012  129435

Mujahid MALIKULMULK
365 36 2960
**3 of 7**

A single evaluation for recurrent tinnitus is assigned whether the sound is perceived in one ear, both ears, or in the head.

This is the highest schedular evaluation allowed under the law for tinnitus. (38 CFR 4.87)

**2. Whether the decision to deny compensation for cataracts bilateral eyes (claimed as vision impairment) was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for cataracts bilateral eyes (claimed as vision impairment) is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**3. Whether the decision to deny compensation for diabetes mellitus was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for diabetes mellitus is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**4. Whether the decision to deny compensation for erectile dysfunction was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR





3.105)

The decision to deny compensation for erectile dysfunction is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

### 5. Whether the decision to deny compensation for gastroesophageal reflux disease (claimed as GI disorder) was clearly and unmistakably erroneous.

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for gastroesophageal reflux disease (claimed as GI disorder) is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

### 6. Whether the decision to deny compensation for hypertension was clearly and unmistakably erroneous.

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for hypertension is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

### 7. Whether the decision to deny compensation for irritable bowel syndrome was clearly and unmistakably erroneous.

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome,



Mujahid MALIKULMULK
365 36 2960
5 of 7

then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for irritable bowel syndrome is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**8. Whether the decision to deny compensation for recurrent hemorrhoids was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for recurrent hemorrhoids is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**9. Whether the decision to deny compensation for recurrent inguinal hernia right was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for recurrent inguinal hernia right is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**10. Whether the decision to deny compensation for status post transsphenoidal excision of benign pituitary microadenoma with hormone replacement therapy was clearly and unmistakably erroneous.**

Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the previous decision was fatally flawed at the time it was made. A determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior decision. Once a determination is made



Mujahid MALIKULMULK
365 36 2960
6 of 7

that there was a clear and unmistakable error in a prior decision that would change the outcome, then that decision must be revised to conform to what the decision should have been. (38 CFR 3.105)

The decision to deny compensation for status post transsphenoidal excision of benign pituitary microadenoma with hormone replacement therapy is not considered to have been clearly and unmistakably erroneous because the alleged error involved an exercise of judgment which cannot be characterized as undebatably erroneous. (38 CFR 3.105)

**11. Entitlement to an earlier effective date for service connection of bilateral hearing loss.**

A clear and unmistakable error (CUE) is an error that is undebatable, so that reasonable minds could not differ. A determination of CUE must be based on the record and the law that existed at the time of the prior decision. Such error must have been prejudicial to the claimant. Once a determination is made that there was a CUE in a prior decision that would change the outcome of that decision, that decision must be corrected as if the former error had not been made. (38 CFR 3.105) Rating decision dated March 11, 2019 failed to apply 38 CFR 3.156(c) when granting service connection for your bilateral hearing loss following the Board of Veterans Appeals decision dated March 5, 2019. This rating corrects the prior decision by applying 38 CFR 3.156(c) while granting service connection for your bilateral hearing loss effective July 24, 2004.

We have granted your claim for bilateral hearing loss. (38 CFR 3.303, 38 CFR 3.304, 38 CFR 3.385)

Effective December 3, 2004, the date of your original claim as additional evidence was received to confirm your paratrooper service.(38 CFR 3.156, 38 CFR 3.400) There was no CUE made in rating decision dated July 24, 2006.(38 CFR 3.105)

Service connection is warranted because your military occupational specialty (MOS) of paratrooper is consistent with acoustic trauma and your hearing loss has been linked to that acoustic trauma. (38 CFR 3.303, 38 CFR 3.304, 38 CFR 3.385)

Your VA examiner opined that it is more likely than not that your hearing loss is due to military noise exposure.

VA examination findings show the left ear with 0 percent discrimination. Decibel (dB) loss at the puretone threshold of 500 Hertz (Hz) is 95, at 1000 Hz is 90, at 2000 Hz is 105, at 3000 Hz is 105, and at 4000 Hz is 105. The average decibel loss is 101 in the left ear. The right ear shows a speech discrimination of 68 percent. Your right ear decibel (dB) loss at the puretone threshold of 500 Hertz (Hz) is 50, at 1000 Hz is 60, at 2000 Hz is 60, at 3000 Hz is 75, and at 4000 Hz is 85. The average decibel loss is 70 in the right ear.

An evaluation of 50 percent is assigned because your right ear has a speech discrimination of 68 with an average decibel loss of 70 and your left ear has a speech discrimination of 0 with an average decibel loss of 101. The evaluation for hearing loss is based on objective testing. Higher



Case 2:23-cv-10582-JJCG-EAS   ECF No. 35, PageID.179   Filed 07/12/23   Page 18 of 20

Mujahid MALIKULMULK
365 36 2960
**7 of 7**

evaluations are assigned for more severe hearing impairment. (38 CFR 4.85)

**REFERENCES:**

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all Veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our website, www.va.gov.



OA9VG01200931100110012  129441

*ATTACHMENT A*

## Data on display
## Education pays, 2022

May 2023

**To see this chart in Spanish, visit CareerOneStop** .

Wondering if it pays to stay in school? Here's one reason to continue: workers' earnings increase as educational attainment rises, according to the U.S. Bureau of Labor Statistics (BLS).

In 2022, for example, workers age 25 and over without a high school diploma had median weekly earnings of $682. Workers whose highest level of education was a diploma made $853 per week, or just over 25 percent more than those who didn't finish high school—and earnings improved with every level of education completed. (See chart.)

**Earnings and unemployment rates by educational attainment, 2022**



Handwritten annotations on chart:
- Doctoral degree: $2583
- Professional degree: $2080
- Master's degree: $1661
- Bachelor's degree: $1432
- Associate's degree: $1005
- Some college, no degree: $985
- High school diploma: $853
- Less than a high school diploma: $628

Click legend items to change data display. Hover over chart to view data.
Note: Data are for persons age 25 and over. Earnings are for full-time wage and salary workers.
Source: U.S. Bureau of Labor Statistics, Current Population Survey.

View Chart Data

If that's not a compelling enough reason to stay in school, here's another: BLS data also show that more education means less unemployment. In 2022, people without a diploma had the highest unemployment rate (5.5 percent) among those at all education levels, with unemployment rates decreasing as education increased. (Toggle between legend items to see unemployment rates.)

Individual experiences differ, depending on factors such as your occupation or field of degree. But each level of education you complete may help you develop the skills to qualify for higher paying jobs. And educational credentials can signal to employers that you're able to plan ahead, meet deadlines, and follow through on other important tasks.

These data are from the BLS Current Population Survey, a monthly survey of households that collects information about demographic and labor force characteristics. Learn more about career options, including the education typically required to enter an occupation, by visiting the Occupational Outlook Handbook.

SUGGESTED CITATION:
"Education pays, 2022," *Career Outlook*, U.S. Bureau of Labor Statistics, May 2023.

PRINT

RELATED CONTENT





MUTAHU S. MALIKULMULK
41086 SOUTHWIND DR
CANTON, MICHIGAN 48188
CIVIL No. 23-10582

MARSHALS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN/SOUTHERN DISTRICT
231 W. LAFAYETTE ROOM 564
DETROIT, MICHIGAN 48226

U.S. POSTAGE PAID
FCM LG ENV
CANTON, MI 48187
JUL 07, 2023
$10.44
R2305K134648-18

48226
RDC 99

7022 1670 0000 9005 80